LUIS LI (State Bar No. 156081)
luis.li@mto.com
MELINDA E. LEMOINE (State Bar No. 235670)
melinda.lemoine@mto.com
GINA F. ELLIOTT (State Bar No. 320093)
Gina.Elliott@mto.com
MUNGER, TOLLES & OLSON LLP
350 South Grand Avenue, Fiftieth Floor
Los Angeles, CA  90071-3426
Telephone:  (213) 683-9100
Facsimile:  (213) 687-3702

Attorneys for COSIMO CAVALLARO
and ART ABOVE GROUND

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| COSIMO CAVALLARO and ART ABOVE GROUND,<br><br>Plaintiff,<br><br>vs.<br><br>SLSCO, LTD. and Ultimate Concrete LLC<br><br>Defendants. | Case No. **'20CV2157 WQHAGS**<br><br>COMPLAINT FOR DAMAGES<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Cosimo Cavallaro and Art Above Ground (together "Plaintiffs"), through their undersigned counsel, hereby bring this Complaint against SLSCO Ltd. ("SLSCO") and Ultimate Concrete LLC ("Ultimate Concrete") (together "Defendants") for infringing Cavallaro's rights under the Visual Artists Rights Act, 17 U.S.C. § 106A, and for conversion, nuisance, trespass to chattels, and trespass. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 17 U.S.C. § 106A, and supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367. Cavallaro alleges, on personal knowledge as to himself and information and belief as to others, as follows:

## INTRODUCTION

1.     Cavallaro is a renowned visual artist whose work has been exhibited in museums, galleries, and art festivals all over the world. His work often involves sculptures in perishable materials, commenting on concepts such as the absurdity of effort, waste and decay. In late 2018, Cavallaro began work on a piece of art he called "Cheese Wall." He leased a portion of private property near the United States-Mexico border, and began construction on the piece, made entirely out of "bricks" of Cotija cheese. Cavallaro made the cheese himself, formed the bricks, salted and drained them of water, and formed them into the shape of a wall. Cavallaro intended the piece to comment on the nearby border wall, made of steel. As he told the Los Angeles Times, "You see the waste in my wall, but you can't see the waste in [President Trump's] $10-billion wall, which in time will be removed?" During its construction, the Cheese Wall garnered significant attention, and its message resonated with many.

2.     Despite months of effort and expense, Defendants deprived Cavallaro of his work and prevented him from completing the Cheese Wall. On information and belief, on or around October 2019, Defendants, with wanton disregard or intentional hostility to the Cheese Wall, its status as piece of art, and its location on private property, destroyed the Cheese Wall. Using heavy, land-moving machinery,

Defendants' employees or agents, buried the Cheese Wall, destroying it beyond repair.  SLSCO has been hired by the federal government to fortify the wall separating the United States and Mexico near the site of the Cheese Wall and, on information and belief, Ultimate Concrete is a subcontractor to SLSCO on this project. But that work did not require driving through and over the Cheese Wall, which was on private property ten yards off the access road to the border wall.

3. The destruction of the Cheese Wall harmed the honor and reputation of Cavallaro as an artist.  The destruction of his work has caused Cavallaro to suffer significant emotional distress and has also caused him significant financial loss due to the lost profits and recognition that the completed work on the Cheese Wall would have attracted.  Because Cavallaro's rights as an artist have been decimated, he has no choice but to seek compensatory and punitive damages under the Visual Artists Rights Act and the common law.

## PARTIES

4. Plaintiff Cosimo Cavallaro is an artist and resident of Los Angeles, California.  Cavallaro is the "author of a work of visual art" within the meaning of 17 U.S.C. § 106A.

5. Plaintiff Art Above Ground is a California non-profit public benefit corporation with the mission of providing socially relevant public art installations.

6. Defendant SLSCO Ltd. is a Texas corporation with its principal place of business at 6702 Broadway, Galveston, Texas.

7. Defendant Ultimate Concrete LLC is a Texas corporation with its principal place of business at 14300 Montana Ave., El Paso, Texas.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and 17 U.S.C. § 106A.  The court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367.

9. Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)(2), 1400(a) because a substantial part of the events giving rise to the claims occurred in the district.

## BACKGROUND FACTS

**Cosimo Cavallaro**

10. Cosimo Cavallaro has worked as a professional artist for over thirty years. After graduating from art school, he worked as an Art Director for feature films, and has since directed, produced, and written television commercials and documentaries.

11. Cavallaro began sculpting, using perishable materials, in 1995. One of his favorite materials to work with is cheese, which hearkens back to his childhood raised by an Italian family. In the past, he has covered a chair, a hotel room, an entire house, and the supermodel Twiggy in melted cheese for his pieces. Other materials he has worked with include ham, chocolate, and ketchup. Using perishable materials enables Cavallaro to comment on the waste of material objects in modern society. It also evokes strong responses in the viewer. For example, Cavallaro's 2005 piece *Sweet Jesus* – a large format sculpture of Jesus in chocolate – provoked outrage and protest from Catholic organizations.

12. Cavallaro's work with perishable materials has attracted critical acclaim and significant press attention from outlets including the New York Times, the Los Angeles Times, People Magazine, and CBS News. It has also been recognized by industry publications including artnet, Contemporary Visual Arts magazine, and BlueCanvas magazine.

13. Cavallaro's peers in the artistic community have recognized Cavallaro's work in both perishable and non-perishable materials. Cavallaro has exhibited his pieces at galleries, museums, and art festivals around the world.

**Planning and Creation of Cheese Wall**

14. Cavallaro has contemplated using cheese to create art in the shape of a wall for many years. After President Trump announced his intention to build and fortify a wall along the United States-Mexico border, Cavallaro felt compelled to create a wall made out of cheese near the border and set a plan in motion to do so.

15. Cavallaro conceptualized his piece as a wall made of cheese standing directly in front of the so-called "Trump wall." His intention was to encourage people to think of the "Trump wall" differently by considering the ephemerality of walls and the waste inherent in building any wall, whether made of cheese or steel. He planned to build a 1,000-foot wall out of blocks of cheese near the government's border wall. Cavallaro hoped that his work would highlight the perils of sunk cost fallacy at all levels.

16. He also planned, after the wall had stood for some period of time, to sell the blocks that had been part of the Cheese Wall and to create bronze casts of the cheese blocks. He expected to display the bronze casts in museums or galleries around the world, where they would be accessible to more people. This display would have been a culmination of the work, rather than a new work, and would have brought Cavallaro's message about walls to greater numbers of people. Cavallaro also intended to sell these bronze casts, so people could own a permanent part of the Cheese Wall.

17. Cavallaro selected an area near a portion of the existing border wall in southern San Diego County for his project. Art Above Ground, a nonprofit organization supporting Cavallaro's work, entered into a lease with a private landowner for a 14-acre piece of land in this area (the "site").

18. Construction on the wall began in March 2019 and continued in phases. Cavallaro used over 400 blocks of Cotija, a hard Mexican cheese, to begin building the Cheese Wall. Each block of cheese weighed over fifty pounds. Cavallaro crafted

the cheese himself.  To prepare the blocks for use in the wall, he salted each block and drained it of water.

19.   By August 18, 2019, the Cheese Wall was approximately six feet tall at its highest point, three feet wide, and almost 70 feet long.  As shown in the picture below, portions that were built earlier hardened and turned brown, just as copper sculptures oxidize.



20.   Due to the expense of building the Cheese Wall, Cavallaro and Art Above Ground launched a campaign to raise money for supplies and labor to continue the construction.

21.   Although unfinished, the Cheese Wall garnered significant attention from both the mainstream press and art publications.  BBC News, the Los Angeles Times, USA Today, the Sacramento Bee, and the Huffington Post were among the many news outlets that published articles on the Cheese Wall.  Wire services including Reuters also wrote about the Cheese Wall, and outlets around the world republished these stories. The Cheese Wall also received coverage from television programs including The Late Late Show with James Corden and Telemundo, and Cavallaro was interviewed for CBC Radio.  In addition to this mainstream press, many art publications including artnet News, Apollo Magazine, and designboom reported on the project.

**Defendants' Unlawful Actions**

22.   SLSCO has a contract to construct a portion of a wall along the United States-Mexico border in San Diego County, California.  On information and belief, Ultimate Concrete is a subcontractor performing part of this work for SLSCO.

23.   Defendants knew of Cavallaro's construction of the Cheese Wall before its destruction, and were aware that it was a piece of art.  In fact, Israel Evans, an employee of Ultimate Concrete, donated to the fundraising campaign for the Cheese Wall in March 2019, thus demonstrating his knowledge of its status.  Indeed, the fundraising campaign webpage through which the employee donated expressly informed all viewers and potential donors that "[t]he Cheese Wall is [Cavallaro's] latest art project" and included pictures of Cavallaro in the process of creating the Cheese Wall as well as coverage of the sculpture by various media outlets.

24.   On information and belief, on or about October 2019, Defendants or their employees and agents knowingly and willfully trespassed onto the site and destroyed the Cheese Wall.  SLSCO and Ultimate Concrete used large construction vehicles to dismantle the wall, which was then over six feet tall at its highest point, and to plow many of the blocks of cheese into the ground.  Other blocks were removed from the site entirely.  These actions destroyed the Cheese Wall, and only rubble and dirt remained.

25.   On October 23, 2019, Evans contacted Cavallaro, who was not at the site, by telephone, and asked whether Cavallaro would like SLSCO to remove the Cheese Wall.  Cavallaro declined.

26.   On November 16, 2019 Cavallaro returned to the site and discovered the Cheese Wall had been entirely destroyed.  There were tire tracks on the site from

-7-
COMPLAINT FOR DAMAGES

heavy machinery, and earth—including portions of the Cheese Wall—had been moved in a way that evinced use of heavy machinery, as shown in the picture below.



27.     Metal slats used for the border wall had also been left on Art Above Ground's site, despite the fact that it was private property that neither SLSCO, Ultimate Concrete, nor the government had permission to access.  The Cheese Wall had not been obstructing access to the border wall construction site.

**Emotional and Monetary Harm**

28.     The destruction of the Cheese Wall has caused great distress to Cavallaro.  His artistic vision has been left unfulfilled.  Cavallaro has been deprived of the opportunity to communicate his artistic message through the Cheese Wall—a message he has spent years contemplating—and to see the Cheese Wall, at its full length, stand in contrast to the border wall.  He is also unable to observe and invite others to observe the Cheese Wall in person.  The destruction of the Cheese Wall

also means that Cavallaro will no longer be able to cast the bricks in bronze and display them in museums and galleries around the world to reach an international audience.

29. Cavallaro has also suffered economic harm. He has lost the cost of the materials, which were completely destroyed or removed by SLSCO and Ultimate Concrete. He has also lost the economic benefit of continued exposure to others of his work. Cavallaro anticipated news coverage and donations for the Cheese Wall to increase as he lengthened the wall. Cavallaro intended to sell some blocks of cheese that made up the Cheese Wall to raise money for his future artistic endeavors. Because the blocks were destroyed, buried, or removed, he cannot do so. Finally, Cavallaro was not able to recover the $2,000 security deposit from his lease of the site because the landlord complained about the buried bricks of cheese left behind by Defendants' destruction of the Cheese Wall.

### FIRST CAUSE OF ACTION

**(Visual Artists Rights Act, 17 U.S.C. § 106A; against SLSCO and Ultimate Concrete)**

30. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 37 inclusive.

31. On information and belief, Defendants violated Cavallaro's right to prevent the intentional distortion, mutilation, and modification of the Cheese Wall and to prevent the destruction of a work of recognized stature, in violation of 17 U.S.C. § 106A.

32. Cavallaro was the author of the Cheese Wall, a work of visual art under VARA.

33. The intentional distortion, mutilation, and modification of the Cheese Wall was prejudicial to Cavallaro's honor and reputation.

34. The Cheese Wall was a work of recognized stature, and Defendants' destruction of the Cheese Wall was an intentional and/or grossly negligent act.

35. Defendants induced, encouraged, or supported the destruction of the Cheese Wall.

36. Defendants contributed to the infringement because it had knowledge, reason to know, or was willfully blind to the destruction of the Cheese Wall, and caused, inducted, or materially contributed to its destruction.

37. Defendants had the right and ability to supervise the activity that led to the destruction of the Cheese Wall, and had a direct financial interest in the destruction of the Cheese Wall.

38. Cavallaro incurred significant financial losses as a result of the wanton destruction of his valuable work of art.

## SECOND CAUSE OF ACTION

### (Conversion; against SLSCO and Ultimate Concrete)

39. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 37 inclusive.

40. As more fully set forth above, Cavallaro was the creator and owner of the Cheese Wall. Cavallaro did not relinquish his ownership or title rights to the Cheese Wall.

41. On information and belief, Defendants intentionally interfered with Cavallaro's rights of ownership and control of the Cheese Wall. Defendants' actions permanently changed the essential character of the Cheese Wall and constitute a conversion under California law.

42. The Cheese Wall had particular value to Cavallaro because of its unique economic value as a piece of art. Absent its destruction, Cavallaro would have continued to profit from the Cheese Wall through exposure, donations, and, eventually, selling some of the blocks of cheese and casts of the blocks.

43. On information and belief, the conduct of Defendants in converting Cavallaro's property was carried on by Defendants in conscious disregard of Cavallaro's rights.

44. Cavallaro has also suffered economic distress as a result of the wanton destruction of his artwork.

### THIRD CAUSE OF ACTION

### (Private Nuisance, under Cal. Civil Code §§ 3479, 3481; against SLSCO and Ultimate Concrete)

45. Plaintiff incorporate herein by reference each and every averment contained in paragraphs 1 through 37 inclusive.

46. Art Above Ground and Cavallaro had exclusive right to use and access the land located at 000 Tecate Truck Trail under a lease with the land's owner.

47. On information and belief, Defendants substantially interfered with Art Above Ground's use and enjoyment of the site by invading it, destroying the Cheese Wall, and burying or removing its constituent parts.

48. This interference was unreasonable. There was no social utility to the destruction of the Cheese Wall: it was a piece of art located on private property and was not obstructing or blocking access to any right of way.

### FOURTH CAUSE OF ACTION

### (Trespass to Chattels; against SLSCO and Ultimate Concrete)

49. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 37 inclusive.

50. On information and belief, Defendants negligently, recklessly, and/or intentionally trespassed on Cavallaro's personal property interest in the Cheese Wall by seizing, mutilating, and removing portions of it.

51. Cavallaro suffered emotional and monetary damages as a result of this trespass to his personal property.

### FIFTH CAUSE OF ACTION

### (Trespass; against SLSCO and Ultimate Concrete)

52. Plaintiffs incorporate herein by reference each and every averment contained in paragraphs 1 through 37 inclusive.

53. Art Above Ground and Cavallaro had exclusive right to use and access the land located at 000 Tecate Truck Trail under a lease with the land's owner.

54. On information and belief, Defendants intentionally intruded on the site without authorization, and thereby disrupted Art Above Ground's right to exclusive possession of the land.

55. Plaintiffs suffered emotional and monetary damages as a result of this trespass.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs prays for judgement against Defendants and their affiliates, agents, servants, employees, partners and all persons in active concern or participation with it, for the following relief:

1. For Plaintiffs' damages in such amount as may be found; alternatively, at Plaintiffs' election, for maximum statutory damages under 17 U.S.C. § 504(c)(2); or for such other amounts as may be proper pursuant to 17 U.S.C. §§ 504(c), 1203(c).

2. For prejudgment interest according to law.

3. For Plaintiffs' attorneys' fees and full costs incurred in this action pursuant to 17 U.S.C. §§ 505 and 1203.

4. For all such further and additional relief, in law or in equity, to which Plaintiffs may be entitled or which the Court deems just and proper.

DATED: November __3__, 2020    MUNGER, TOLLES & OLSON LLP

By: _____
MELINDA E. LEMOINE
Attorneys for Cosimo Cavallaro and Art Above Ground